IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAM WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-CV-01899-LJV |
| ) | Jury Trial Demanded |
| JORD, INC. ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JORD, INC.'s MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

### Introduction

Plaintiff Sam Wilson ("Plaintiff") has filed a First Amended Complaint alleging a violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 *et seq.*, and seeking declaratory and injunctive relief due to defendant Jord, Inc.'s ("Defendant") website allegedly not being accessible to persons suffering from blindness or other visual impairment. Plaintiff's First Amended Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2) for lack of standing, because Plaintiff's claim is moot, and because of a lack of personal jurisdiction over Defendant. The First Amended Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

### Plaintiff's First Amended Complaint Must be Dismissed As This Court Is Without Subject Matter Jurisdiction

This Court lacks subject matter jurisdiction over this matter because Plaintiff has failed to establish his standing under the ADA and because Plaintiff's claims are moot. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. U.S.,* 201 F.3d 110, 113 (2d

Cir. 2000). Plaintiff has the burden of proving by a preponderance of evidence that subject matter jurisdiction exists. *Id.* (citing *Malik v. Meissner,* 82 F.3d 560, 562 (2d Cir. 1996)).

Plaintiff must sufficiently allege the following three factors necessary to confer standing under the ADA: (1) that he has been injured under the ADA; (2) that it is reasonable to infer from the complaint that the discriminatory treatment will continue; and (3) that it is reasonable to infer that he intends to return to the website. *Guglielmo v. Nebraska Furniture Mart, Inc.,* 2020 WL 7480619, at *4 (S.D.N.Y. 2020) (citing *Harty v. Greenwich Hosp. Grp., LLC,* 536 F. App'x 154, 154-55 (2d Cir. 2013)).

With respect to the first factor necessary to confer standing, Plaintiff here has failed to allege a sufficient injury in fact. Instead, Plaintiff has alleged various "access barriers" including unlabeled elements. (*See* First Amended Complaint ¶ 31, Dkt. No. 29.) Plaintiff states that he attempted to access Jord's website, www.Jord.co, and that "Plaintiff is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access on the Website, including but not limited to, the ability to purchase Defendant's products." (*Id.*) Plaintiff's First Amended Complaint alleges that Plaintiff attempted to access Defendant's website to purchase Defendant's products. (*Id.*) This contradicts Plaintiff's prior allegations demonstrating he was a "tester" of websites for accessibility. (*See* Complaint ¶ 17 (Plaintiff was injured when he attempted to access Defendant's Website . . . but encountered barriers), Dkt. No. 1; *id* ¶ 26 ("Plaintiff would like to, and intends to, attempt to access the Website in the future to research the products and services the Website offer (sic), or to test the Website for compliance with the ADA").) Plaintiff's new allegations, which contradict his prior allegations, should be disregarded. *See Wallace v. New York City Dep't of Corr.*, No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) ("In this amended complaint, the plaintiff directly contradicts the

facts set forth in his original complaint. This court accepts the facts as described in the original complaint as true . . . ."). Moreover, a plaintiff cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm. *Harty v. Simon Property Group, L.P.,* 428 F. App'x 69, 71 (2d Cir. 2011). Here, Plaintiff is unable to show such a likelihood, not only based on the lack of reasonable probability that he will attempt to use the website in the future, but also because his claims are moot, as explained below. Plaintiff' credible allegations regarding his purpose for visiting the website—allegations contained in the original Complaint— fail to allege a concrete and particularized injury sufficient to confer standing. *See Guglielmo*, 2020 WL 7480619, at *4 (citing *Mendez v. Apple, Inc.*, 2019 WL 2611168, at *2 (S.D.N.Y. Mar. 28, 2019)).

With respect to the second factor necessary to confer standing, Plaintiff makes only conclusory allegations that it is reasonable to infer the discriminatory treatment will continue. These allegations fail, not only because they are vague and conclusory, but because all elements of Defendant's website which were identified in Plaintiff's Complaint as access barriers (except one which was removed from the website prior to service of the complaint) have been made compliant with Web Content Accessibility Guidelines 2.1 AA ("WCAG 2.1"),[1] and because Defendant has otherwise made the website compliant with WCAG 2.1 AA. (Declaration of Osman Shah ("Shah Decl.") ¶¶ 11-15.) Additionally, Defendant is committed to maintaining its website in compliance with WCAG 2.1 AA in the future, including by installing and running Accessibe software on its website. (*Id.* ¶ 16.)

---

[1] The use of WCAG standards by the Justice Department and Courts addressing claims that websites are inaccessible are discussed further below.

With respect to the third factor necessary to confer standing, Plaintiff's First Amended Complaint fails to establish any reasonable inference that he intends to return to the website. Plaintiff's First Amended Complaint does not allege facts to infer a reasonable likelihood that Plaintiff intends to revisit Defendant's website or has any motivation to do so.  Instead, Plaintiff pleads vague and conclusory claims that he "would like to, and intends to attempt to access the Digital Platform in the future to research the products and services the Digital Platform offers, or to test the Digital Platform for compliance with the ADA."  (First Amended Complaint ¶ 32.) This vague and conclusory claim is insufficient to demonstrate a reasonable likelihood that Plaintiff will access Defendant's website in the future and sustain any concrete injury.  *See Harty v. West Point Realty, Inc.* 477 F.Supp.3d 163, 169 (S.D.N.Y. 2020).  In fact, Plaintiff has previously plead that he is now deterred from using the website at all.  (*See* Complaint ¶ 26.)  For these reasons, Plaintiff lacks standing sufficient to establish this Court's subject matter jurisdiction.

Plaintiff's First Amended Complaint further fails to establish this Court's subject matter jurisdiction because Plaintiff's claims are moot, as expounded upon below.  Plaintiff's First Amended Complaint arises out of his allegations that, as a blind and visually impaired person, he was unable to fully navigate and access the features on Defendant's website using screen reader software.

Courts have generally recognized the WCAG standards as the "gold standard" for making websites accessible to the blind and visually impaired.  For instance, see the consent judgments in *Guglielmo v. Alpha Industries of Virginia*, 2020 WL 7022563 (S.D.N.Y) and *National Federation of the Blind, et al. v. HRB Digital LLC and HRBG Tax Group, Inc.* (D. Mass.), at https://www.ada.gov/hrb-cd.htm (a case in which the Department of Justice intervened and was a

party to the consent judgment and where the Defendant was ordered to make its website compliant with WCAG 2.0 AA). The WCAG 2.1 AA standards are an advance which makes websites more accessible to mobile websites. *See The Biden Effect: Expect DOJ Action in Digital Accessibility,* at https://www.essentialaccessibility.com/blog/biden-effect-doj-digital-accessibility (discussing the use of the WCAG standards as the appropriate technical standard for determining ADA compliance, while noting that the Justice Department has required compliance with the WCAG 2.0 or 2.1 AA standards in a number of settlements in actions brought by it concerning website accessibility).

While Plaintiff's First Amended Complaint demands Defendant make its website accessible to him and other blind and visually impaired individuals, Defendant has already taken all actions necessary so that the www.Jord.co website complies with the WCAG 2.1 AA. (Shah Decl. ¶¶ 9-12 and Ex. 1 (Accessibe Compliance Audit Report).) Further, Defendant is committed to maintaining its website in a manner compliant with the ADA in the future. (*Id.* ¶ 16 and Exhibit 1.) To ensure future compliance, Defendant Jord has installed Accessibe software on its website, which automatically audits the website for any elements non-compliant with the WCAG 2.1 AA standards. (*Id.*)

A case becomes moot, and therefore no longer a "case" or "controversy" when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Already, LLC v. Nike, Inc.,* 133 S. Ct. 721, 723 (2013). In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings. *Id.* (citing *Kamen v. American Tel. & Tel. Co.,* 791 F.2d 1006, 1011 (2d Cir. 1986)).

As this Court noted in *Diaz v. Kroger Co.,* a voluntary cessation of allegedly illegal activity, such as by bringing a non-compliant website into compliance with WCAG 2.1 AA standards, will render a case moot if the defendant can demonstrate that "(i) there is no reasonable expectation that the alleged violation will recur and (ii) interim relief or events have completely eradicated the effects of the alleged violation." *Diaz v. Kroger,* 2019 WL 2357531, at *2 (S.D.N.Y. June 4, 2019) (quoting *Clear Channel Outdoor, Inc. v. City of New York,* 594 F.3d 94, 110 (2d Cir. 2010)).

Here, the Court lacks subject matter jurisdiction over Plaintiff's First Amended Complaint because Defendant has already updated its website to make the elements of its website which allegedly presented access barriers to blind and visually impaired persons accessible. Indeed, Defendant has made the entire website compliant with WCAG 2.1 AA standards. Further, Defendant has taken additional action to ensure its website remains compliant with such standards in the future. Thus, there is no reasonable expectation that access barriers will recur on the [www.Jord.co](www.Jord.co) website in the future.

As Plaintiff lacks standing and because his claim is moot, this Court lacks subject matter jurisdiction and Plaintiff's First Amended Complaint should be dismissed.

**This Court Lacks Personal Jurisdiction Over Defendant**

Plaintiff claims to be a visually impaired resident of Erie County, New York, who encountered barriers to accessing information on Defendant's website. Plaintiff seeks to bring claims arising out of the website's design. Plaintiff's claim may not be maintained in this Court due to the lack of personal jurisdiction.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v.*

*Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996).  To determine whether the exercise of personal jurisdiction is proper, the court conducts a two-part inquiry:  <u>First</u>, a court looks at whether there is a basis for personal jurisdiction under the laws of the forum state.  New York's long-arm statute allows a court to exercise personal jurisdiction "over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the cause of action "aris[es] from" that transaction.  CPLR §302(a)(1).  <u>Second</u>, a court must examine whether the exercise of personal jurisdiction comports with due process.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 168 (2d Cir. 2013).  Due Process considerations require that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.  (*Id.*)  Plaintiff will be unable to meet his burden of showing that the exercise of jurisdiction over Defendant in this case comports with Due Process.

Defendant is a Missouri corporation without any facilities in New York.  (Shal Decl. ¶¶ 1-2.)  It operates a web store that can be accessed virtually anywhere in the world that has internet access.  (*Id.* ¶ 3.)  All orders placed over the website are accepted by Defendant at its offices in Missouri.  (*Id.* ¶ 4.)  Goods ordered over the internet are shipped by Defendant from its facilities in Missouri.  (*Id.* ¶ 5.)  Plaintiff alleges personal jurisdiction based on the sales made by Defendant to New York residents over the internet.  (First Amended Complaint ¶ 19.)  In the First Amended Complaint, Plaintiff makes the new allegation that Defendant makes its products available for purchase at two locations within New York. (*Id.* ¶ 20.)  However, there is no allegation that these locations are owned or operated by Defendant, and, as made clear in the Shah Declaration, these locations are not owned or operated by Defendant.  (Shah Decl. ¶¶ 1-2.)

For personal jurisdiction, there must be an articulable nexus or substantial relationship between the business transaction and the claim asserted. *Licci v. Lebanese Canadian Bank,* 20 N.Y.3d 327, 339 (N.Y. 2012). Plaintiff's allegations of wrongdoing in this case, however, have no nexus to Defendant "shipping its products to customers located within the state" or "making their products available for purchase at two locations." Plaintiff's allegations relate solely to the functionality of Defendant's website. While Plaintiff alleges in his First Amended Complaint that the interactivity of Defendant's website is sufficient to subject Defendant to the jurisdiction of this Court, an interactive website, standing alone, is insufficient to confer personal jurisdiction. *Mercer v. Rampart Hotel Ventures, LLC.,* 2020 WL 882007, at *6 (S.D.N.Y. Feb. 24, 2020).

The mere solicitation of orders for the purchase of goods within a state, to be accepted without the state and filled by shipment of the purchased goods interstate, does not render the seller amenable to suit within the state where the goods are received. *International Shoe Co. v. State of Washington,* 66 S. Ct. 154, 158 (1945) (citing *Green v. Chicago, Burlington & Quincy R. Co.,* 27 S. Ct. 595, 596 (1907); *International Harvester Co. v. Kentucky,* 34 S. Ct. 944 (1914); *Philadelphia & Reading R. Co. v. McKibbin*, 37 S. Ct. 280 (1917); *People's Tobacco Co. v. American Tobacco Co*., 38 S. Ct. 233 (1918)). Here, Plaintiff does not even allege having ordered any goods from the website or having received any goods from Defendant. As discussed *supra*, Plaintiff's new allegation that he accessed the site to purchase products contradicts his prior pleadings and should be disregarded. *See Wallace*, 1996 WL 586797, at *2. Moreover, Plaintiff makes no connection to his attempted use of the website and the availability of some of Defendant's products at stores owned by third parties. Plaintiff has thus failed to establish

sufficient facts for the exercise of jurisdiction over Defendant to comport with the requirements of Due Process.

### **A Standalone Website Is Not a Place of Accommodation For Purposes of the ADA**

In his Supplemental Declaration, Osmaan Shah, CEO of Defendant, Jord, Inc., states that Jord does not have a physical place of business where it sells its products to the public. (Supplemental Declaration of Osmaan Shah ("Shah Supplemental Decl.") ¶ 2.) Instead, almost all of its sales are made through its website. (*Id.* ¶ 3.) Plaintiff's new allegation that "Upon information and belief, Defendant has sold its products to New York residents . . . through its brick and mortar locations," (First Amended Complaint ¶ 28), is a blatant misstatement of fact as Defendant has no brick and mortar locations in New York, or in any other state. Because a standalone website (i.e., one which is not an adjunct or supplemental to a "brick and mortar" (physical) place of business) is not a public accommodation for purposes of Title III of the ADA, Plaintiff's Complaint fails to state a cause of action and should be dismissed.[2]

Courts in multiple circuits have held that websites are not places of "public accommodation" under the ADA, as the unambiguous language of the statute includes only goods and services provided at physical, brick-and-mortar establishments. *See Ford v. Schering-Plough Corp.,* 145 F.3d 601, 612 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place…in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places"); *Parker v. Metro Life Ons. Co.,* 121 F.3d 1006, 1010-11 (6th Cir. 1997) (en banc) ("A public accommodation is a physical place and this Court has previously so held."); *Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104,

---

[2] Defendant acknowledges a split amongst Circuits as to whether a website may constitute a place of public accommodation under Title III, and suggests the cases finding standalone websites may not constitute such public accommodations are most persuasive.

1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public accommodations'…All the items on this list, however, have something in common.  They are actual, physical places where good or services are open to the public, and places where the public gets those goods or services . . . [T]his context suggests that some connection between the good or service complained of an actual physical place is required.").[3]

Similarly, Judge Komitee, of the Eastern District of New York, concluded that the Newsday website was not a place of public accommodation for purposes of Title III of the ADA. *Winegard v. Newsday, LLC,* 556 F. Supp. 3d. 173, 173 (E.D.N.Y. 2021) (holding that "the ADA excludes, by its plain language, the websites of businesses with no public-facing, physical retail operations from the definition of 'public accommodations'").  The court stated that "the ADA's prohibitions on discrimination do not apply to all businesses." *Id*. at 175.  They apply to places of public accommodation.  The court then noted that, "[t]he phrase 'public accommodation' has a long history.  At common law, it referred to the particular subset of businesses that had heightened duties of service — often relating to lodging and transportation — because of the public nature of their physical facilities." *Id.* at 175.  While the court noted that this definition

---

[3] *See also Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir. 2021*), vacated as moot by Gil v. Winn-Dixie Stores, Inc.*, 21 F.4th 775 (11th Cir. 2021).  *Gil* held:

> The statutory language in Title III of the ADA defining 'public accommodation' is unambiguous and clear.  It describes twelve types of locations that are public accommodations.  All of these listed types of locations are tangible, physical places.  No intangible places or spaces, such as websites, are listed.  Thus, we conclude that, pursuant to the plain language of Title III of the ADA, public accommodations are limited to actual, physical places.  Necessarily then, we hold that websites are not a place of public accommodation under Title III of the ADA.  Therefore, Gil's inability to access and communicate with the website itself is not a violation of Title III.

*Id.* at 1277.

had grown over time, "it has not expanded to include every type of business operation. The ADA's definition of public accommodation is consistent with this history." *Id*.

The Court then reviewed the statutory definition of "public accommodation" and reached the same conclusion as the court in *Gil*. Specifically, the Court in *Winegard* held:

> The limitation emerging from this definition is unmistakable. The definition contains twelve subparagraphs, each followed by a general residual clause. Those subparagraphs contain a total — by my count — of fifty specific examples. Of those fifty examples, at least forty-nine indisputably relate to physical places.
>
> This limitation was obviously deliberate. Congress could easily have said "all businesses operating in interstate commerce," or referred to all "retail" or "service" operations. But it chose instead to focus on physical places . . . . It did not. These choices demonstrate Congress's decision to apply the ADA's anti-discrimination provision to physical places rather than business operations generally.

*Id*. at 177.

The court in *Winegard* was not persuaded by the argument that the internet was not yet in operation at the time the ADA was adopted. It discussed the existence of a number of different types of businesses (e.g., the Sears Roebuck catalog) which had been in existence for a number of years prior to the passage of the ADA, noting that, "[i]f Congress had intended, it could easily have required catalogs to be printed in Braille and TV shows to include closed captioning by including such media within the scope of 'public accommodations.'" *Id*. at 177-78. It also noted that Congress was aware of the pendency of the internet at the time it adopted the ADA. *Id.* at 178 n.3. The court further noted that Congress did not change the definition of "public accommodation" to include websites when it amended the ADA in 2008. *Id*. at 178 n.11.

The court also noted that Title III uses the phrase "place of" to modify "public accommodation," concluding that: "Set together in sequence, the collective phrasing leaves no doubt that Section 12182(a) was not meant to reach the website of a business like Newsday. Dictionaries overwhelming define 'place' to mean a physical location." *Id*. at 179.

11

Additionally, recently-decided cases have agreed with the inapplicability of Title III to standalone websites. In *Martinez v. Mylife.com, Inc.,* 2021 WL 5052745, at *1 (E.D.N.Y. 2021), a legally blind individual attempted to use the defendant's website, which provided services and goods, including the ability to purchase a subscription to manage one's online reputation. The Plaintiff in *Martinez*, as Plaintiff here, alleged he was unable to access the website because it was incompatible with his screen reading software and that this violated the ADA and corresponding New York state and city laws. The Plaintiff in *Martinez* urged the court to liberally construe the ADA's listed categories of public accommodations and to find the website was a "sales establishment" subject to Title III. *Id.* at *2. The court, however, stated that even as liberally construed, the defendant's website was not a sales establishment covered by the ADA. *Id.*[4] In so finding this the court reviewed the specific examples of "sales establishment" and noted that they are all brick-and-mortar stores selling physical goods. *Id*. The court determined that construing a website selling web-based services to be a sales establishment would contravene settled principles of statutory interpretation. *Id.*

Noting that some cases do hold certain websites to be places of public accommodation, the court in *Martinez* explained that, in those cases, the website served as an adjunct to a brick-and-mortar business. *Id.* at *3. As the defendant had no public-facing, physical retail operation, these cases did not apply. *Id.* Similarly, here, where Defendant has no public-facing, physical retail operation, Defendant's website is not a place of public accommodation.[5]

---

[4] *See also Gomez v. Gates Estates, Inc.,* 2022 WL 458465 (N.D. Cal. 2022), in which the court found the general interest of a "window-shopper" of real estate in being able to gather information from a website unrelated to any desire to avail himself of defendant's actual services was not protected by the ADA, noting the ADA protected his interest in using the website only if its inaccessibility impeded his access to services of defendant's physical office.

[5] The *Martinez* court also addressed its reasoning in not following other courts that had found standalone website to qualify as public accommodations, noting these cases relied in part on

Because Defendant has no publicly-facing physical place of business, its standalone website does not constitute a place of public accommodation, such that this Court should hold that Plaintiff has failed to state a cause of action and dismiss this action pursuant to Rule 12(b)(6).[6]

**Conclusion**

This Court lacks subject matter jurisdiction both because Plaintiff has failed to adequately allege standing and because this case is moot. Further, this Court lacks personal jurisdiction over Defendant. Lastly, Plaintiff fails to state a claim upon which relief may be granted as Defendant's website is not a place of public accommodation. For these reasons, the Court should dismiss Plaintiff's First Amended Complaint.

Dated: May 28, 2022                                  Respectfully Submitted,

                                                           DANNA MCKITICK, P.C.

                                    By:   /s/ David R. Bohm_____
                                              David R. Bohm, #35166
                                              (admitted *pro hac vice*)
                                              7701 Forsyth Blvd., Suite 1200
                                              St. Louis, MO 63105-3907
                                              Tel: (314) 726-1000
                                              Fax: (314) 725-6592
                                              dbohm@dmfirm.com

                                              Michael H. Reed
                                              YANKWITT LLP
                                              140 Grand St., Suite 705
                                              White Plains, NY 10601

---

*Pallozzi v. Allstate Life Insurance Co.,* 198 F.3d 28 (2d Cir. 1999) which, in fact, does not mandate or suggest any conclusion as to whether a standalone website is a place of public accommodation. *Martinez,* 2021 WL 5052745, at *3.

[6] Plaintiff's claim that two stores in the State of New York carry some of Defendant's products is likely an attempt to obfuscate the issues in this case. Certainly, the presence of a Jord watch in a store operated by a third party does not constitute a physical location of Defendant in the State of New York.

13

Case 1:20-cv-01899-LJV-JJM   Document 30-1   Filed 05/28/22   Page 14 of 14

Tel: (914) 686-1500  
Fax: (914) 487-5000  
michael@yankwitt.com  
ATTORNEYS FOR DEFENDANT

14